232 N.J. Super. 458 (1989)
557 A.2d 688
PHILADELPHIA NEWSPAPERS, INC. AND TIMES OF TRENTON PUBLISHING CORP., APPELLANTS,
v.
STATE OF NEW JERSEY, DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF STATE POLICE, DEPARTMENT OF THE TREASURY, OFFICE OF THE GOVERNOR, AND OFFICE OF THE ATTORNEY GENERAL, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 1989.
Decided April 24, 1989.
*459 Before Judges KING, BRODY and ASHBEY.
Warren W. Faulk argued the cause for appellants (Brown & Connery, attorneys; Warren W. Faulk, on the brief).
William Harla, Assistant Attorney General, argued the cause for respondents (Donald R. Belsole, Acting Attorney General, attorney; William Harla, of counsel; Mark J. Fleming, Deputy Attorney General, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Appellants are newspaper publishers who appeal from a ruling by the Superintendent of State Police that they are not entitled to copies of records that disclose details of the use of state-owned helicopters by Governor Kean and former Attorney General Edwards. The Superintendent based his ruling on the need to keep the information secret because terrorists might *460 use it to plan the assassination of these officials. Appellants contend that they are entitled to the records under the Right to Know Law (N.J.S.A. 47:1A-1 et seq.), the common law and the federal and State constitutions. We reverse the Superintendent.
Appellants' newspapers ran stories for several weeks that were prompted by the State's purchase of a 4.3 million dollar helicopter to be used by the Governor for official and unofficial travel. The tenor of the articles was that the purchase was an extravagance. Spokesmen for the Governor were quoted as stating that he reimbursed the State treasury for his use of state-owned helicopters for personal or political travel. One of the articles reported that Attorney General Edwards, citing his concern for security, denied the press copies of records that would disclose details of the Governor's use of the helicopters and records that would disclose when and in what amount he reimbursed the State when he used them for unofficial travel. In questioning the need for secrecy in these matters, the newspaper accounts pointed out that the governors of Pennsylvania, Delaware and New York routinely provide such information to the media.
Pursuant to an agreement with the Attorney General's office, appellants' attorneys made a formal written request for copies of the records with the understanding that it would be submitted to the Superintendent and that his decision would constitute final administrative action appealable to this court pursuant to R. 2:2-3(a)(2).[1] The request included a demand for access to records of the Attorney General's use as well as the Governor's use of state-owned helicopters. The requested documents are described in the written request as
... records which record, reflect or relate to the following:
(a) The dates, from September 1, 1985 to present, on which Governor Kean traveled in a state-owned or operated helicopter;

*461 (b) The dates, from September 1, 1985 to present, on which Attorney General Edwards traveled in a state-owned or operated helicopter;
(c) The flight logs, or other documents which record the length of time of, and distance traveled on, each such flight as well as the place of departure and destination;
(d) For each such trip, the identities of all passengers on the helicopter;
(e) For each such trip, identification of which state-owned or operated helicopter was used;
(f) The cost records for each trip;
(g) The purpose of each trip, including whether it was for official state business or for non-official, personal or political purposes; and
(h) Whether the State of New Jersey was reimbursed for any costs incurred in connection with any trip and, if so, for which flights such reimbursement was made, by whom the reimbursement was made, the amount of such reimbursement, and the reason therefor.
The Superintendent's determination is in the form of a lengthy affidavit in which he describes existing records, some rather specifically and some generally, that correspond to the kinds of records described in the request. Appellants do not challenge the Superintendent's assertion that no records were made that identify the persons who accompanied the Governor or Attorney General when they used state-owned helicopters or that noted the purpose of each trip. There is thus no issue respecting items (d) and (g). The Superintendent also asserts without contradiction that records of the general cost of maintaining state-owned helicopters are available to the public, but no records were made of the cost of each trip as requested in item (f). The Superintendent rejected plaintiffs' request for the remaining records.
We are thus left with a dispute over access to records that identify the particular helicopter used by the Governor or Attorney General on each occasion; that state the date and time of each use, the distance traveled, the place of departure and arrival; records of the amount of reimbursement of costs to the State, and records that identify the person or persons making the reimbursement when the helicopter was used for private or political purposes.
*462 The law is settled as to the approach a court must take in reviewing the denial of access to public records under the Right to Know Law and under the common law where disclosure might endanger lives. Loigman v. Kimmelman, 102 N.J. 98 (1986) (request for access to Attorney General's audit of the confidential account of county prosecutor where disclosure would reveal information that endangered the lives of informers).
We first consider whether any of the records sought is a "public record" as defined in the Right to Know Law. If it is a public record as so defined and it has not been excepted from coverage pursuant to the terms of the statute, any member of the public is entitled to examine and copy it. Irval Realty v. Bd. of Pub. Util. Commissioners, 61 N.J. 366, 372-373 (1972). A "public record" is defined in N.J.S.A. 47:1A-2, which reads in relevant part as follows:
Except as otherwise provided in the act or by any other statute, resolution of either or both houses of the Legislature, executive order of the Governor, rule of court, any Federal law, regulation or order, or by any regulation promulgated under the authority of any statute or executive order of the Governor, all records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the State or of any political subdivision thereof or by any public board, body, commission or authority created pursuant to law by the State or any of its political subdivisions, or by any official acting for or on behalf thereof ... shall, for the purposes of this act, be deemed to be public records.
The State acknowledges that none of the statutory exceptions applies to the records in question. The only issue in applying the statute then is whether any record is "required by law to be made, maintained, or kept on file...." See Nero v. Hyland, 76 N.J. 213, 220 (1978).
The State Treasurer is required by law to make, maintain and keep on file certain records that may contain at least some of the information sought, particularly reimbursement to the State for the private use of state-owned helicopters. The Treasurer is required by N.J.S.A. 52:18-11b to "[k]eep accounts of the receipts and expenditures of the public money...." Similarly he is required by N.J.S.A. 52:18-13 to "state in books the *463 account of all moneys received by him for or in behalf of the state...." The Treasurer's annual report to the Legislature is required to include a balance sheet exhibiting, among other things, the "amount of receipts and from what sources they have been received; ..." N.J.S.A. 52:18-16. Finally, all state departments, institutions, commissions, boards, committees and officials are required by N.J.S.A. 52:27B-34 to deposit all state revenue collected "to the credit of the State of New Jersey... [and a] report of such moneys collected shall be submitted to the commissioner [of the Department of Taxation and Finance] and the State Treasurer...."
Discussing this point in its brief, the State claims that the records the above statutes require to be kept "would not contain the information sought by the newspapers concerning reimbursements." At the same time, however, it argues that "no statute requires that the Governor reimburse the State for trips taken in the State helicopter" and that because of the need to protect the Governor and the Attorney General "24 hours a day," those officials are entitled to the use of state-owned helicopters whenever they wish and "no reimbursement is necessary regardless of where the Governor or the Attorney General travels." The State concludes that any reimbursement would therefore be purely voluntary and therefore records of such reimbursement are not required by law to be made, maintained or kept.
The State's argument suggests that there are records containing at least some of the information sought concerning reimbursements. Moreover, the Superintendent states in his affidavit that "documents reflecting reimbursements on the Governor's behalf reveal information (dates of travel, destination, length of flight, etc.) which would violate the concerns for security expressed here by me."
If reimbursement payments were noted in records required by law to be made, maintained or kept, they must be made available under the Right to Know Law. Although the Governor *464 may not be required by law to reimburse the State, it does not follow that when he or someone on his behalf does reimburse the State, records of that payment are not required by law to be made, maintained or kept. If there are security reasons for excepting those records from the coverage of the Right to Know Law, they may be excepted from coverage by issuance of an "executive Order of the Governor" pursuant to N.J.S.A. 47:1A-2. The Governor has not issued such an order.
It appears from the Superintendent's affidavit that flight logs have been kept that contain the specific information appellants seek regarding use of state-owned helicopters by the Governor and the Attorney General. Appellants do not contend that such records are required by law to be made, maintained or kept. Nevertheless, they claim to be entitled to access to such records under the common law, and the federal and State constitutions. At least facially appellants are entitled to access to the logs under the common law and we therefore need not discuss the constitutional issues.
"[W]ritten memorials `made by public officers in the exercise of public functions' are common-law public records even though they may not be public records under the Right to Know Law." Loigman v. Kimmelman, 102 N.J. at 102 (quoting Nero v. Hyland, 76 N.J. at 221). We are satisfied that the flight logs are common-law public records. Although the definition of a public record is broader under the common law than under the Right to Know Law, the public's access is more restricted. Under the common law a citizen seeking access to a common-law public record must be acting in "good faith," Loigman, 102 N.J. at 104, and, where the record contains confidential matters, the citizen's interest in having access to the record must be weighed against the public's interest in confidentiality.
Thus, if the governmental need in confidentiality is slight or non-existent, citizen-taxpayer status will ordinarily warrant that the matters be disclosed. On the other hand, when the public interest in confidentiality is greater, the citizen's right of access is qualified. [Id. at 105.]
*465 A newspaper's interest in keeping a "watchful eye on the workings of public agencies" suffices to establish appellants' good faith. Red Bank Register v. Board of Educ., 206 N.J. Super. 1, 9 (App.Div. 1985).
The balance between the governmental need for confidentiality and appellants' right of access "must be concretely focused upon the relative interests of the parties in relation to [the] specific materials." McClain v. College Hosp., 99 N.J. 346, 361 (1985). The Superintendent states in his affidavit that a common feature of terrorists' assassination plans is the surveillance of the intended targets' daily activities in order to establish a predictable pattern of activity. He infers from this fact that disclosure to the public of specific details of the Governor's and Attorney General's past use of state-owned helicopters could provide terrorists with information from which they may project a pattern of these officials' future activities. However, there is no evidence in this record, including any statement in the Superintendent's affidavit, that there has been a pattern of past helicopter use that could be used to predict future use. The only references in the record of past use suggest that the Governor and Attorney General used the helicopters infrequently and sporadically.
We are mindful, as the Superintendent emphasizes in his affidavit, that the assassination of the Governor or the Attorney General would be a terrible blow to the State and therefore the mere chance of such a disaster should weigh heavily in the balance. That concern, however, does not relieve us of our duty to focus upon the evidence offered by the Superintendent as the basis for denying appellants information by which the public may know how the government is being run. That evidence does not support the Superintendent's fears. There is no evidence that the information sought would disclose a pattern of activity that could be used to predict the movements of the Governor or the Attorney General. The State presents no evidence that disclosing the information would render the Governor or Attorney General any more vulnerable to assassination *466 than not disclosing the information. Such information is routinely disclosed in our neighboring states. We recognize the Superintendent's expertise in matters of security, but his unsupported conclusion that common-law public records may not be disclosed for security reasons is not the last word where a conflicting public interest must be weighed in the balance.
At the same time, because we do not have a full reviewable record, we stop short of deciding with finality that appellants must be given access to all records to which they may facially be entitled at common law. In Pfleger v. N.J. State Highway Dept., 104 N.J. Super. 289 (App.Div. 1968), we held that a prerogative writs action to compel the Department of Transportation to institute condemnation proceedings be brought in the Law Division, not in the Appellate Division for the following reasons:
There is no administrative machinery within the Department of Transportation for itself condemning land, for hearing the arguments for and against seeking condemnation in court, or for deciding whether or not a "taking" has been effected by the Department's actions ... Nor is there a procedure in such cases by which a record may be made before the Department, upon which this court can review its decision. [Id. at 291-292.]
Under the Right to Know Law a citizen may apply to the Superior Court by a proceeding in lieu of prerogative writs for an order requiring the custodian of the record to afford inspection, the right to copy or to obtain a copy of a public record. N.J.S.A. 47:1A-4. Although such an action arguably may be brought in the Appellate Division pursuant to R. 2:2-3(a)(2), the action belongs in the Law Division for the reasons stated in Pfleger. A trial court is better able than an appellate tribunal to determine initially whether the material sought qualifies as a "public record" under the Right to Know Law and to balance the parties' interests when that must be done to determine whether there is a common-law right of access. In performing these functions the trial court may review in camera the documents in question or, if more appropriate, review in camera a carefully prepared descriptive index of documents as discussed in Loigman, 102 N.J. at 108-112.
*467 Appellants have offered to accept access to fewer than all the pertinent public records and less than an entire record if it should turn out that a record unexpectedly contains information that if disclosed would endanger the Governor, the Attorney General or their successors. Loigman expressly authorizes a trial judge to excise or delete sensitive confidential information before records are released. Id. at 113. If the State believes that any public record falling under the purview of this opinion contains such information and the parties cannot agree on the material to be excised or deleted, the dispute shall be resolved in proceedings brought in the Law Division consistent with this opinion.
The determination of the Superintendent is reversed, subject to the further considerations discussed in this opinion.
NOTES
[1] The better practice, as more fully discussed below, would have been for plaintiffs to have brought an action in the Law Division in lieu of prerogative writs so that genuine disputes of material facts could have been adjudicated on a reviewable record and in camera judicial reviews of documents, when indicated, could have been conducted.