591 A.2d 921

SOUTH JERSEY PUBLISHING COMPANY, INC., T/A THE PRESS & SUNDAY PRESS, PLAINTIFF–APPELLANT, v. NEW JERSEY EXPRESSWAY AUTHORITY, D/B/A THE ATLANTIC CITY EXPRESSWAY AND LOIS E. BRAITHWAITE, CHRIS C. SEHER, HUGH A. KELLY, WILLIAM L. DALTON, CHARLES PESSAGNO, AS COMMISSIONERS OF THE AUTHORITY, AND DONALD B. VASS AS INTERESTED AND INDISPENSABLE PARTY, DEFENDANTS–RESPONDENTS.

Argued February 25, 1991—Decided June 27, 1991.

480

*Nelson C. Johnson* argued the cause for appellant (*Dilworth, Paxson, Kalish & Kauffman,* attorneys; *Nelson C. Johnson* and *Barbara Sardella,* on the brief).

*E. Edward Bowman* argued the cause for respondents New Jersey Expressway Authority, d/b/a The Atlantic City Expressway, and Lois E. Braithwaite, Chris C. Seher, Hugh A. Kelly, William L. Dalton, and Charles Pessagno, as Commissioners of the Authority (*Gruccio, Pepper, Giovinazzi & DeSanto,* attorneys).

*Dennis M. Tuohy* argued the cause for respondent Donald B. Vass, as interested and indispensable party (*McGahn, Friss & Miller,* attorneys; *Mr. Tuohy* and *Solomon Forman,* on the brief).

*Thomas J. Cafferty* submitted a brief on behalf of *amicus curiae,* New Jersey Press Association (*McGimpsey & Cafferty,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

The issue before us is whether the public's right to know, as embodied in our common law, in the Right to Know Law, *N.J.S.A.* 47:1A–1 to –4, and in the Open Public Meetings Act, *N.J.S.A.* 10:4–6 to –21, requires the disclosure of the minutes and related documents of a governmental meeting properly held in executive session once the matter under discussion has been resolved fully.

South Jersey Publishing Company (the Press) sought disclosure of the minutes and a related Memorandum of Understanding (Memorandum) reached at an executive-session meeting of the New Jersey Expressway Authority (Authority) con-

cerning the termination of employment of Donald B. Vass, the Authority's then-Executive Director. The Authority rejected the Press's disclosure request, asserting that public revelation at any time of the minutes of the executive session and the Memorandum would circumvent its purpose for meeting in executive session. The trial court agreed and the Appellate Division affirmed, specifically holding that permanent nondisclosure was permissible under the Open Public Meetings Act, *N.J.S.A.* 10:4–6 to 10:4–21.

We granted the Press's petition for certification, 122 *N.J.* 414, 585 *A.*2d 410 (1990), and now reverse.

## I

The facts of the case are undisputed. Donald B. Vass was Executive Director of the Authority from 1985 until March 16, 1989. During Vass's tenure, the Press published a series of articles reporting on Vass's allegedly improper conduct in his position as Executive Director. Prompted by the Press reports, the Authority conducted an investigation of the use of Authority credit cards by several of its employees, including Vass.

In January 1989, the Authority notified the affected employees about the investigation, informing them that a special meeting regarding the investigation would be held on January 27, 1989, and that the meeting would take place in executive session because it pertained to a personnel matter. See *N.J. S.A.* 10:4–12(b)(8). It further informed them of their right to request that the discussion take place in public. See *ibid.*

On January 26, 1989, Vass's attorney requested in writing that the discussion "be handled as any normal personnel matter would be in Executive Session." By consent of Vass and the Authority, the January 27th meeting was postponed and the matter scheduled for discussion at the regular Authority meeting on February 16, 1989. The Authority adopted a resolution in open session on that date authorizing the Commissioners to meet in executive session to discuss personnel matters involv-

ing Vass. Significantly, the resolution authorized disclosure of the executive-session minutes

upon final resolution of the issues discussed, unless in the opinion of the Commissioners, disclosure of any discussion which takes place in said closed meeting would circumvent the very purpose of discussing the matter in closed session, in which event the minutes of such subject matter shall not be disclosed to the public.

In early March, the parties negotiated the Memorandum, which set forth the terms and conditions of Vass's resignation. At the next regular meeting of the Authority on March 16, 1989, the Commissioners adopted a resolution in open session authorizing a second executive-session meeting concerning Vass's personnel matter, containing a disclosure provision identical to that set forth in the February 16th resolution. The Authority reviewed the Memorandum in executive session and subsequently adopted a resolution in open session authorizing the Authority to agree to its terms. The resolution described the following economic terms of the parties' agreement: (1) full salary to Vass through December 31, 1989; (2) pension, health- and life-insurance, and other relevant group-benefit coverage through December 31, 1989; and (3) compensation for all un- used vacation and sick time accrued through March 16, 1989. By agreement between Vass and the Authority, the Memoran- dum was to remain a confidential part of Vass's personnel file. The resolution further provided that

[t]he minutes of the closed meetings at which the Authority discussed personnel matters involving Donald B. Vass shall not be made available to the public since disclosure of any such discussion would circumvent the very purpose of the Open Public Meetings Act which authorizes a public body to discuss such matters privately.

In both the resolution and a public statement issued the same day, the Authority referred to its investigation of Vass's use of an Authority credit card for personal purposes and its belief that the "investigation and other related matters [had] dimin- ished Mr. Vass's ability to manage the affairs of the Authority in the future." The public statement also indicated that the Attorney General had reviewed the matter and had found no criminal intent or action by Vass.

Following the adoption of the resolution at the public-session portion of the March 16th meeting, a Press reporter requested a copy of the Memorandum and the executive-session minutes. The Authority rejected his request, informing him that both documents would remain confidential permanently. Both documents are currently on file with the Authority and have not been released to the public at any time.

In April 1989, the Press commenced litigation against the Authority, four of its Commissioners, and Vass, seeking to compel the Authority to disclose the Memorandum and executive-session minutes pertaining to Vass's termination of employment and to void the Authority's agreement with Vass. The Press moved for summary judgment, contending that it was entitled to the documents pursuant to the Right to Know Law and the common law. The Authority and Vass cross-moved for summary judgment, claiming that the executive-session exception to the Open Public Meetings Act, *N.J.S.A.* 10:4–12(b), exempted the documents from disclosure requirements.

In granting the cross-motions for summary judgment, the trial court concluded that the personnel exception to the Open Public Meetings Act, *N.J.S.A.* 10:4–12(b)(8), was an implicit exception to the Right to Know Law's disclosure requirements. See *N.J.S.A.* 47:1A–2. The court then held that the Authority did not have to disclose the Memorandum and executive-session minutes, reasoning that to do so would circumvent the purpose of meeting in closed session. It did, however, limit its holding to disclosure at that time, noting that there may be circumstances warranting disclosure in the future. In an unpublished opinion, the Appellate Division affirmed substantially for the reasons expressed in the trial court's opinion, adding only that the nondisclosure could continue indefinitely.

## II

New Jersey has a history of commitment to public participation in government and to the corresponding need for an

informed citizenry. The New Jersey courts have long recognized a limited common-law right to inspect governmental records. *See, e.g., Ferry v. Williams,* 41 *N.J.L.* 332 (Sup.Ct. 1879) (court recognized common-law right of discovery of public documents); *Casey v. MacPhail,* 2 *N.J.Super.* 619, 65 *A.*2d 657 (Law Div.1949) (citizen taxpayer granted access to voter registration lists). The Open Public Meetings Act, *N.J.S.A.* 10:4-6 to –21, and the Right to Know Law, *N.J.S.A.* 47:1A-1 to –4, also reflect that tradition favoring the public's right to be informed about governmental actions.

█ Under the common law, the threshold condition for access to public records is that a citizen establish an interest in the subject matter of the material he or she is seeking. *Irval Realty, Inc. v. Board of Pub. Util. Comm'rs,* 61 *N.J.* 366, 372, 294 *A.*2d 425 (1972). The interest does not have to be purely personal, but rather "[a]s one citizen or taxpayer out of many, concerned with a public problem or issue, he might demand and be accorded access to public records bearing upon the problem, even though his individual interest may [be] slight." *Ibid.* For example, a newspaper's interest in " 'keep[ing] a watchful eye on the workings of public agencies' " is sufficient to accord standing under the common law. *Red Bank Register v. Board of Educ.,* 206 *N.J.Super.* 1, 9, 501 *A.*2d 985 (App.Div.1985) (quoting *Nixon v. Warner Communications, Inc.,* 435 *U.S.* 589, 598, 98 *S.Ct.* 1306, 1312, 55 *L.Ed.*2d 570, 579–80 (1978)).

█ After a court determines that a plaintiff has standing to assert a right to inspect and examine governmental documents, it must determine if the records sought are "public records." Under the common law, a "public record" is

one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. The elements essential to constitute a public record are * * * that it be a written memorial, that it be made by a public officer, and that the officer be authorized by law to make it. [*Nero v. Hyland,* 76 *N.J.* 213, 222, 386 *A.*2d 846 (1978)

(quoting *Josefowicz v. Porter*, 32 *N.J.Super.* 585, 591, 108 *A*.2d 865 (App.Div. 1954)).]

■ The common-law right of access to public records is not absolute, however. *See Beck v. Bluestein*, 194 *N.J.Super.* 247, 260, 476 *A*.2d 842 (App.Div.1984). Rather, after determining that a plaintiff has standing and the documents sought are public records, a court must balance the plaintiff's interest in the information against the public interest in confidentiality of the documents, including a consideration of whether the "demand for inspection is 'premised upon a purpose which tends to advance or further a wholesome public interest or a legitimate private interest.'" *Loigman v. Kimmelman*, 102 *N.J.* 98, 112, 505 *A*.2d 958 (1986) (quoting *City of St. Matthews v. Voice of St. Matthews, Inc.*, 519 *S.W*.2d 811, 815 (Ky.1974)). In *Loigman*, we suggested several factors a court may consider in performing its balancing:

> (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials. [*Id.* 102 *N.J.* at 113, 505 *A*.2d 958.]

As we noted, the court should balance "[a]gainst these and any other relevant factors * * * the importance of the information sought to the plaintiff's vindication of the public interest." *Ibid.; see also Philadelphia Newspapers v. State Dep't of Law & Public Safety*, 232 *N.J.Super.* 458, 557 *A*.2d 688 (App.Div. 1989) (court followed *Loigman* approach and found common-law public records subject to disclosure).

■ In its balancing, a court may find it necessary to compel production of the sought-after records and conduct an *in camera* review thereof. It may, indeed, decide that to release the records in a redacted form, editing out any privileged or confi-

dential subject matter, is appropriate. *See Philadelphia Newspapers, supra,* 232 *N.J.Super.* at 467, 557 *A.*2d 688. A mere summary of the record is inadequate, however, where a more complete record reflecting the underlying facts is available and the plaintiff's need therefor outweighs any threat disclosure may pose to the public or private interest. *See Citizens for Better Educ. v. Board of Educ.,* 124 *N.J.Super.* 523, 529, 308 *A.*2d 35 (App.Div.1973).

In 1963, the Legislature supplemented the public's right of access to public records by enacting the Right to Know Law, *N.J.S.A.* 47:1A–1 to 47:1A–4, declaring the public policy of the State to be "that public records shall be readily accessible for examination by the citizens of this State, with certain exceptions, for the protection of the public interest." *N.J.S.A.* 47:1A–1. Although the Legislature did not curtail or affect the common-law right to inspect and examine public records, *Irval Realty, supra,* 61 *N.J.* at 373, 294 *A.*2d 425, it did eliminate the standing requirement for access; under the Right to Know Law, one need only be a citizen of the State to obtain access to public records. *See N.J.S.A.* 47:1A–2. Thus, the threshold issue in a Right–to–Know action is not standing but whether the record sought is a "public record."

The range of public records available under the Right to Know Law is narrower than under the common law. Specifically, the law defines a "public record" as follows:

Except as otherwise provided * * * by any other statute * * * or executive order of the Governor, all records which are required by law to be made, maintained or kept on file by any * * * board, body, agency, department, commission or official of the State or of any political subdivision thereof or by any public board, body, commission or authority created pursuant to law by the State * * * shall, for the purposes of this act, be deemed to be public records. [*N.J.S.A.* 47:1A–2.]

In any event, the common-law and statutory rights are not mutually exclusive. The two complement each other, together embodying the State's strong commitment to access to public records. *See Irval Realty, supra,* 61 *N.J.* at 373, 294 *A.*2d 425

(Right to Know Law "clearly was not intended to diminish or in any way curtail the common law right of examination"); *accord Beck v. Bluestein, supra,* 194 *N.J.Super.* at 259, 476 *A.*2d 842.

The State also evidenced its commitment to public participation in government in the Legislature's enactment of the Open Public Meetings Act in 1960. *N.J.S.A.* 10:4-1 to -5 (*repealed by L.*1975, *c.* 231, § 17). (At the time, it was known as the "Right to Know Act".) Although the Act established the right of the public to attend any meeting of a public body at which "official action" was taken, *see N.J.S.A.* 10:4-2 (*repealed by L.* 1975, *c.* 231, § 17), information about governmental deliberations was limited as only the official vote, not the discussion leading thereto, was required to be conducted in public. See *N.J.S.A.* 10:4-3 (*repealed by L.*1975, *c.* 231, § 17). In substantially amending the law in 1975, *N.J.S.A.* 10:4-6 to -21, the Legislature strengthened the public's right to attend meetings of public bodies by requiring that "all meetings * * * be open to the public at all times". *N.J.S.A.* 10:4-12(a). The Act permits executive sessions only for meetings concerning specifically-enumerated subjects of discussion, *N.J.S.A.* 10:4-12(b), the public discussion of which would endanger the public interest or cause an unwarranted invasion of personal privacy or other individual rights. *N.J.S.A.* 10:4-7; *see also* 10:4-12(b) (list of subjects for which executive session is authorized). Before the public is excluded from such a meeting, the public body must adopt a resolution at a public meeting stating generally the subject to be discussed and, "as precisely as possible, the time when and the circumstances under which the discussion conducted in closed session of the public body can be disclosed to the public." *N.J.S.A.* 10:4-13. The specific provision at issue involves the exception for

any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be adverse-

ly affected request in writing that such matter or matters be discussed at a public hearing. [*N.J.S.A.* 10:4–12(b)(8).]

In the 1975 amendments, the Legislature included a statement of purpose in the body of the Act:

The Legislature finds and declares that the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies, is vital to the enhancement and proper functioning of the democratic process; that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society, and hereby declares it to be the public policy of this State to insure the right of its citizens to have adequate advance notice of and the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way except only in those circumstances where otherwise the public interest would be clearly endangered or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion. [*N.J.S.A.* 10:4–7.]

Significantly, to effect the enumerated policy behind the Act, the 1975 amendments to the Open Public Meetings Act require that all public bodies keep "reasonably comprehensible minutes of all [their] meetings * * * which shall be promptly available to the public to the extent that making such matters public shall not be inconsistent with [*N.J.S.A.* 10:4–12]." *N.J.S.A.* 10:4–14. Thus, the Legislature contemplated that the minutes of all meetings, including executive-session meetings, would be disclosed eventually unless their release otherwise would conflict with the legislative purpose in authorizing the executive-session meeting. *Ibid.*

### III

As we observed in *Polillo v. Deane,* 74 *N.J.* 562, 379 *A.*2d 211 (1977), "[t]he current 'Open Public Meetings Act' is in keeping with a strong tradition both in this State and in the nation favoring public involvement in almost every aspect of government." *Id.* at 569, 379 *A.*2d 211. As James Madison wrote:

A popular Government without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or perhaps both. Knowledge will forever govern ignorance. And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives. [Letter to W.T.

Barry, Aug. 4, 1822, in 9 *Writings of James Madison* 103 (G. Hunt ed. 1910) (quoted in *Polillo v. Deane, supra,* 74 *N.J.* at 571, 379 *A.*2d 211).]

Further, governmental secrecy

shrouds corruption and engenders public distrust in government and its officials.

＊　＊　＊　＊　＊　＊　＊　＊

Whether dishonesty does, or does not, exist is irrelevant. The important factor is that "secrecy" creates a belief that it exists which, if extensive enough, could destroy needed public support for government action. ＊ ＊ ＊ The sole method of combating these notions is to demonstrate their falsity by opening the doors of government so that the truth may be viewed by all. [Kugler, *New Jersey's Right to Know: A Report on Open Government* 175 (1974).]

## -A-

■ We must first examine the Authority's purpose for convening a closed meeting to discuss Vass's personnel matter, taking into consideration the principle that any exception to full disclosure under the Open Public Meetings Act should be strictly construed. *Rice v. Union County Regional High School Teachers Ass'n,* 155 *N.J.Super.* 64, 70, 382 *A.*2d 386 (App.Div. 1977), *certif. denied,* 76 *N.J.* 238, 386 *A.*2d 863 (1978); *cf. Foudy v. Amherst–Pelham Regional School Comm.,* 402 *Mass.* 179, 521 *N.E.*2d 391 (1988) (once purpose for closed meeting is terminated, minutes must be released to public). The Authority contends that it met in executive session to encourage a frank and open discussion of all issues relating to Vass's employment and that to disclose the minutes at any time would have a chilling effect on such discussions in the future. Vass argues that an additional purpose of the closed meetings was to safeguard his privacy rights and that release of the minutes would invade such rights. Both respondents claim that treating the minutes of the executive session and the Memorandum as confidential is an extension of an employee's right to have personnel matters discussed in executive session. *See N.J.S.A.* 10:4–12(b)(8).

■ In our view, respondents have overstated the Legislature's purpose in allowing public bodies to exclude the public from meetings at which personnel matters are to be discussed. Unlike other provisions authorizing exclusion of the public, the apparent objective of which is to preserve the secrecy of confidential information, *see, e.g., N.J.S.A.* 10:4–12(b)(1) and (2), the personnel exemption focuses on free and uninhibited discussion about matters relating to the hiring, firing, performance, compensation, and discipline of public employees. Such discussions necessarily involve subjective comments and evaluations of employees by members of the public body, and their willingness to comment openly and freely about such matters would obviously be inhibited if the discussion were to be conducted publicly. The statutory exemption for personnel matters, recognizing the potentially-inhibiting effect of public debate about the qualifications, performance, merit, and shortcomings of specific employees, allows that debate to occur in executive session.

The Act specifically requires, however, that the public maintain "reasonably comprehensible minutes" of all meetings including executive sessions to be "promptly available" to the public unless inconsistent with the provisions of the Act authorizing the public body to meet in executive session. *N.J.S.A.* 10:4–14. The Legislature thereby expressed its strong policy favoring adequate disclosure of all actions taken by public bodies, whether at public meetings or executive sessions.

Contrary to respondent's contentions, we find no inconsistency between the exemption allowing personnel matters to be discussed and debated in executive session and the Act's mandate that adequate minutes of *all* meetings be available to the public. The minutes are intended to recite and disclose any official decision or action taken by a public body, and necessarily must contain sufficient facts and information to permit the public to understand and appraise the reasonableness of the public body's determination. The purpose of the personnel exemption is to facilitate the process by which the public body

makes personnel-type decisions, permitting the debate and deliberation to be conducted without public scrutiny or participation. But the exemption is designed to enable the public body to determine the appropriate action to be taken, not to withhold from the public either the public body's determination or the reasons on which its determination was based. In our view, it would be anomalous to interpret the Open Public Meetings Act, enacted by the Legislature to enhance the public's access to and understanding of the proceedings of governmental bodies, in a manner that foreclosed the public's right to obtain material and information vital to its ability to evaluate the wisdom of governmental action.

 The salutary purposes for allowing confidential discussion are neither inconsistent nor in conflict with the strong public policy requiring comprehensible disclosure of the actions taken by public bodies. To the extent a cognizable privacy interest may be compromised by the required disclosure, the extent of disclosure may be modified appropriately, *see Trenton Times Corp. v. Board of Educ.*, 138 *N.J.Super.* 357, 363, 351 *A.*2d 30 (App.Div.1976), provided the public interest is not subverted. Especially when the issue concerns the conduct of a public official that potentially affects the expenditure of public funds—in this case, continued salary and benefits for more than nine months following Vass's resignation—the public body cannot withhold permanently the minutes from disclosure and the employee cannot require it to do so. The compelling public interest in favor of informing the public of the basis for governmental decision making mandates disclosure. *Cf. Loigman v. Kimmelman, supra*, 102 *N.J.* at 112, 505 *A.*2d 958 (under common-law right to disclosure, court "consider[s] whether the demand for inspection is 'premised upon a purpose which tends to advance or further a wholesome public interest.' ") (quoting *City of St. Matthews v. Voice of St. Matthews, Inc., supra*, 519 *S.W.*2d at 815 (citation omitted)). Stated simply, that public interest is in access to sufficient information

to enable the public to understand and evaluate the reasonableness of the public body's action.

 Our analysis of the purpose of the Open Public Meetings Act personnel exemption demonstrates that disclosure of the executive-session minutes is also required under the Right to Know Law. As the Open Public Meetings Act requires public bodies to keep minutes of their meetings, *N.J.S.A.* 10:4–14, the minutes are "public records" as defined by the Right to Know Law. See *N.J.S.A.* 47:1A–2. Respondents argue, however, that even if the minutes are Right to Know Law "public records," they are exempted from disclosure by the Open Public Meetings Act personnel exception, *N.J.S.A.* 10:4–12(b)(8). As we concluded, however, the Open Public Meetings Act does not absolutely prohibit the release of executive-session minutes, and we find no conflict between their release and the authorization that personnel matters be discussed in executive session. See *ibid.* Thus, the Open Public Meetings Act personnel exception does not excuse the Authority from disclosing the minutes of the executive sessions under the Right to Know Law. *See N.J.S.A.* 47:1A–2.

 Respondents further contend that Executive Order No. 11 (Nov. 15, 1974) requires that the minutes be treated as confidential and thus exempts them from disclosure under the Right to Know Law. We note initially that respondents' reliance on that Executive Order would not relieve the Authority from its obligation to disclose the minutes under the Open Public Meetings Act. Moreover, Executive Order No. 11 replaced Executive Order No. 9 (Oct. 1, 1963), which had banned disclosure of any personnel records kept by a state or local government agency. Although Executive Order No. 11 maintains a general ban on release of personnel records, it authorizes specific disclosure of

[a]n individual's name, title, position, salary, payroll record, length of service in the instrumentality of government and * * * date of separation from the government service *and the reasons therefor;* and the amount and type of pension he is receiving. [Emphasis added.]

As the executive-session minutes undoubtedly include the reasons for Vass's termination of employment, Executive Order No. 11 does not exempt them from disclosure. Rather, similar to disclosure under the Open Public Meetings Act, a court should construe narrowly any possible exceptions to the Right to Know Law. Thus, we interpret Executive Order No. 11's authorization of disclosure of "reasons" for "separation from the government services" to include the results of the Authority's investigation, as revealed in the executive-session minutes.

–B–

■ Although the Open Public Meetings Act specifically entitles the public to attend governmental meetings and obtain the minutes of such meetings, it neither precludes nor authorizes the disclosure of related documents. Thus, we must look to right-to-know principles to determine whether the Authority must provide the Press with a copy of the Memorandum.

■ The parties describe the Memorandum as a "working document" containing the terms and conditions of Vass's termination of employment to which the parties agreed in executive session. In essence, the Memorandum embodies the results of the Authority's investigation of Vass's alleged improprieties. As the Memorandum was not "required to be kept" by the Open Public Meetings Act or any other law, it does not constitute a Right to Know Law "public record." *See N.J.S.A.* 47:1A–2.

■ The Press nevertheless is entitled to disclosure under the common law. First, the Press had a sufficient interest under the common law to request access to public records. *See Red Bank Register v. Board of Educ., supra,* 206 *N.J.Super.* at 9, 501 *A.*2d 985. Because most citizens do not attend public meetings of governmental bodies, the press acts as the eyes and ears of the public. Indeed, the Legislature specifically recognized the press's role in attending public meetings and reporting to the public. *See L.*1975, *c.* 231 Introductory State-

ment (codified at *N.J.S.A.* 10:4–6) ("This bill requires that the public and the press have advance notice of and the opportunity to attend most meetings * * *. If the public and the press cannot attend, they cannot learn of many positions that are considered or taken at such meetings * * *."). As one commentator observed:

> Even when meetings are closed, some hint of what occurs generally reaches the press; but such reports are often incomplete and slanted according to the views of the informant. To restrict the press to such sources of information is a disservice both to the public, which is misled, and to the officials, who may be judged on the basis of these distorted reports. [Note, *Open Meeting Statutes: The Press Fights for the "Right to Know,"* 75 *Harv.L.Rev.* 1199, 1201 (1962).]

The press frequently has asserted rights of access to public records, in the public interest, under the common law and the Right to Know Law. *See, e.g., Philadelphia Newspapers v. State Dep't of Law & Pub. Safety, supra,* 232 *N.J.Super.* 458, 557 *A.*2d 688 (flight logs of State-owned helicopters subject to disclosure under Right to Know Law and common law); *Red Bank Register v. Board of Educ., supra,* 206 *N.J.Super.* 1, 501 *A.*2d 985 (school curriculum reports were common-law "public records" subject to *Loigman*-type balancing); *Trenton Times Corp. v. Board of Educ., supra,* 138 *N.J.Super.* 357, 351 *A.*2d 30 (newspaper's request for disclosure of letter concerning termination of employment of school superintendent denied under Right to Know Law and common law).

In determining whether the Memorandum is a "public record", we consider whether it is a "written memorial made by a public officer authorized to perform that function." *See Nero v. Hyland, supra,* 76 *N.J.* at 222, 386 *A.*2d 846. The record informs us that the Memorandum was an agreement entered into by Vass and the Authority and intended to set forth the precise terms and conditions of Vass's resignation. We have no doubt, in view of its purpose, that the Memorandum constitutes a public record as that term is understood at common law. *Cf. Loigman v. Kimmelman, supra,* 102 *N.J.* at 102, 505 *A.*2d 958 (State's audit of county prosecutor's accounts was common-law public record); *Nero v. Hyland, supra,* 76 *N.J.* at 222, 386 *A.*2d

846 (record of character investigation of candidate for appointment to public office was "written memorial made by public officer[ ] in the exercise of public functions").

■■■ Because we conclude that the Memorandum constitutes a public record, we remand this case to the trial court to balance respondents' interest in confidentiality against the public interest in disclosure of the Memorandum. In balancing those interests, the court will recognize that the public interest in disclosure is intended to enable the public to make a sound judgment about the reasonableness of the Authority's decision regarding Vass, which authorized the expenditure of public funds to continue his salary and benefits for a substantial period of time after his resignation had become effective. Without disclosure of the reasons for Vass's "voluntary separation" from the Authority, the public cannot intelligently make such an evaluation. *See* Note, *supra*, 75 *Harv.L.Rev.* at 1200–01 ("The people must be able to 'go beyond and behind' the decisions reached and be apprised of the 'pros and cons' involved if they are to make sound judgments on questions of policy and to select their representatives intelligently."). The court will balance that public interest against any competing interests respondents have advanced, including facilitation of public employee investigations and the confidentiality of personal information in an employee's personnel file. We note, however, that the parties' agreement to make the executive-session minutes and Memorandum part of Vass's confidential personnel file should not be determinative; rather, the court must "concretely focus[ ] upon the relative interests of the parties in relation to [the] specific materials." *McClain v. College Hosp.*, 99 *N.J.* 346, 361, 492 *A.2d* 991 (1985). In any event, if the court determines that disclosure is warranted, then it should conduct an *in camera* review of the Memorandum and, if necessary, excise any personal information, such as medical and psychological history.

## IV

Accordingly, we hold that the Open Public Meetings Act requires disclosure of the minutes of the executive-session meetings leading to Vass's 1989 termination of employment by the Authority, there being no conflict between the requirement that the minutes be disclosed and the purpose for the executive session. The Law Division should conduct an *in camera* review of the minutes to determine whether they include any confidential or privileged information that should be excised before disclosure.

We further find that the Memorandum of Understanding is a public record under common-law right-to-know principles. We remand the matter to the Law Division to determine if disclosure of the Memorandum is warranted, *see Loigman v. Kimmelman, supra*, 102 *N.J.* 98, 505 *A.*2d 958, and if so, to conduct an *in camera* review of the Memorandum to ascertain whether redaction is necessary.

The judgment of the Appellate Division is reversed and the cause remanded to the Law Division for proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.