# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2721-22

STATES NEWSROOM INC.,
a foreign Nonprofit corporation
d/b/a NEW JERSEY MONITOR,

     Plaintiff-Appellant,

v.

CITY OF JERSEY CITY and
SEAN GALLAGHER
in his official capacity as
Records Custodian,

     Defendants-Respondents,

and

JERSEY CITY POLICE SUPERIOR
OFFICERS ASSOCIATION,

     Defendant/Intervenor-
     Respondent.

_____

Argued September 19, 2024 – Decided September 26, 2024

Before Judges Mawla, Natali, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2055-22.

CJ Griffin argued the cause for appellant (Pashman Stein Walder Hayden, PA, attorneys; CJ Griffin, on the briefs).

Jeremy David Jacobsen, Assistant Corporation Counsel, argued the cause for respondents (Peter Baker, Corporation Counsel, attorneys; Jeremy David Jacobsen, on the brief).

Jeffrey Daniel Catrambone argued the cause for intervenor-respondent (Sciarra & Catrambone, LLC, attorneys; Jeffrey Daniel Catrambone, of counsel and on the brief).

Markiana J. Julceus argued the cause for amicus curiae American Civil Liberties Union (American Civil Liberties Union of New Jersey Foundation and Lowenstein Sandler LLP, attorneys; Liza F. Weisberg, Alexander R. Shalom, and Jeanne M. LoCicero, on the brief).

PER CURIAM

Plaintiff States Newsroom Inc. appeals from an April 4, 2023 order, which denied its request for defendants City of Jersey City and its records custodian Sean Gallagher to unseal and release certain internal affairs (IA) records and for attorneys' fees. We affirm in part, and reverse and remand in part for further proceedings consistent with this opinion.

In August 2019, a lieutenant with the Jersey City Police Department (JCPD) hosted a barbeque for friends and family at his home. At the end of the party, there was an argument about what to do with leftovers. The fight escalated when the lieutenant retrieved his shotgun from a locked safe inside the house, said "today is your day[,]" and then discharged the weapon.

A partygoer called 9-1-1 and State Police responded to the house and found the lieutenant's girlfriend and her son restraining him. The State Police incident report noted the lieutenant appeared to be under the influence.

Police charged the lieutenant with making terroristic threats and possession of a weapon for an unlawful purpose. The latter charge was a Graves Act offense. He also signed a consent for search form, which the troopers executed, seizing thirty different firearms from his home, including the shotgun used in the incident. The lieutenant pled guilty to a lesser charge and completed pre-trial intervention (PTI). Afterwards, he sent notice to all relevant agencies to expunge their records of his criminal matter, pursuant to N.J.S.A 2C:52-1.

Separately, the JCPD conducted an IA investigation into the incident. The IA report concluded the lieutenant had negligently used a firearm while under the influence. JCPD suspended the lieutenant for ninety days. The punishment was anonymized, then published in the JCPD's 2020 major discipline report.

In 2020, while reporting on an unrelated murder trial, the New Jersey Monitor, a subsidiary of plaintiff, noticed the still-anonymous discipline excerpt. The excerpt described the amount of alcohol the lieutenant consumed before the incident, the charges, and his completion of PTI.

In the matter of In re Attorney General Law Enforcement Directive Numbers 2020-5 & 2020-6, our Supreme Court ordered all law enforcement agencies to de-anonymize their discipline reports. 246 N.J. 462, 476 (2021). In compliance, the JCPD added the lieutenant's name back to the report but subtracted any details about the offense.

One year later, in Rivera v. Union County Prosecutor's Office, the Court ruled IA reports can be accessed pursuant to a common law right of access. 250 N.J. 124, 135 (2022). As a result, plaintiff submitted an Open Public Records Act (OPRA) request for a copy of the IA report from defendants. Defendants denied the request, claiming the matter did not relate to concerns about public trust related to bias or dishonesty.

In June 2022, plaintiff sued for access to the IA report regarding the lieutenant. The Jersey City Police Superior Officers Association (JCPSOA) intervened, and along with defendants, filed separate opposition to the relief sought by plaintiff. Defendants and JCPSOA each moved to seal the record.

4

The trial court denied the requests to seal. After further motion practice, the parties agreed to temporarily seal the matter, pending the outcome of the case.

In April 2023, the trial judge heard oral argument and summarized plaintiff's argument. Plaintiff asserted the expungement order did not seal the lieutenant's IA file and defendants were not required to comply with the order because it does not apply to IA or personnel records. The expungement statute contains certain exceptions including that "[i]nformation divulged on expunged records shall be revealed by a petitioner seeking employment within the judicial branch or with a law enforcement or corrections agency and such information shall continue to provide a disability as otherwise provided by law." N.J.S.A. 2C:52-27(c). Plaintiff reasoned, therefore, that "professionals who face disciplinary charges are not protected from their charges becoming public . . . ." Plaintiff also argued there were public policy reasons for learning about the lieutenant's misconduct and "the functioning of the [JCPD] and their [IA] department." And "there would not be a reasonable expectation of privacy because other news publications have written about the [lieutenant's] misconduct and discipline."

The trial judge concluded although "the expungement statute is broad . . . it does not obliterate the record of conviction . . . ." He noted the State Police

was specifically named in the expungement order and defendants had a duty not to release those records once received from the State Police. Although there was "a legitimate interest of the public to know how [IA] departments work[,]" defendants were bound by N.J.S.A. 2C:52-30, which states: "Except as otherwise provided in this chapter, any person who reveals to another the existence of an arrest, conviction or related legal proceeding with knowledge that the records and information pertaining thereto have been expunged or sealed is a disorderly person." The judge denied plaintiff access to the IA records, continued to seal the case, and denied plaintiff attorneys' fees and costs.

Following the judge's ruling, plaintiff's counsel asked the judge to confirm that his ruling meant he "does not reach the Rivera balancing factors[;] it's just simply a matter of the expungement order applying to the [JCPD], correct?" The judge replied he did not "need to get to that point."

I.

We review a trial judge's rulings on matters of law, including the applicability, validity, or interpretation of statutes de novo. In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020). As a result, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co.,

A-2721-22

239 N.J. 531, 552 (2019) (alteration in original) (quoting <u>Manalapan Realty,</u> <u>L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

II.

Plaintiff acknowledges N.J.S.A. 2C:52-1(a) protects records of expunged criminal charges from disclosure, namely, "records on file within any court, detention or correctional facility, law enforcement or criminal justice agency concerning a person's detection, apprehension, arrest, detention, trial or disposition of an offense within the criminal justice system." Additionally, N.J.S.A. 2C:52-1(b) defines expunged records. But plaintiff argues it does not include IA reports.

The entities that must be noticed for an expungement petition include the Attorney General, the State Police, law enforcement agencies, and courts involved in the arrest, detention, or criminal prosecution. N.J.S.A. 2C:52-10. According to plaintiff, therefore, the expungement statute applies only to the courts and entities involved in a criminal prosecution and law enforcement agencies. Because defendants were not involved in the lieutenant's criminal case and the IA report was borne of the non-criminal disciplinary proceeding of a city employee for misconduct, the trial judge should have released the information.

Plaintiff argues the public has an interest in knowing the lieutenant was the subject of an IA investigation, and then disciplined for violent behavior. It contends the public interest far outweighs the interest of an officer who seeks to use expungement to hide his transgressions.

Although N.J.S.A. 2C:52-27 states the matter which is expunged is "deemed not to have occurred, and the [subject] may answer questions relating to . . . [it] accordingly," the prohibition is not absolute. N.J.S.A. 2C:52-27(c) is an exception; it states "[i]nformation divulged on expunged records shall be revealed by a petitioner seeking employment within the judicial branch or with a law enforcement or corrections agency and such information shall continue to provide a disability as otherwise provided by law." Plaintiff alleges the exception exists because it would defy logic to absolutely shield criminal records in the manner as suggested by defendants since it would hide the information from an employer or licensing authority and prevent them from disciplining the employee or licensee. We address these arguments in turn.

N.J.S.A. 2C:52-1 states:

> (a) Except as otherwise provided in this chapter, expungement shall mean the extraction, sealing, impounding, or isolation of all records on file within any court, detention or correctional facility, law enforcement or criminal justice agency concerning a person's detection, apprehension, arrest, detention, trial

or disposition of an offense within the criminal justice system.

(b) Expunged records shall include complaints, warrants, arrests, commitments, processing records, fingerprints, photographs, index cards, "rap sheets" and judicial docket records.

Even though the JCPD was not involved in the lieutenant's criminal prosecution and its role here is as his employer, it is a law enforcement agency pursuant to N.J.S.A. 2C:52-1(a). The statute does not list IA reports as an expunged record under N.J.S.A. 2C:52-1(b), but an IA report can reference or include documents covered by N.J.S.A. 2C:52-1(b).

The expungement statute states the "[i]nspection of the files and records, or release of the information contained therein, which are the subject of an order of expungement . . . may be permitted by the Superior Court upon motion for good cause shown and compelling need based on specific facts." N.J.S.A. 2C:52-19. Therefore, the judge should have determined whether the IA records included expunged records and what could be released rather than hold the statute was an absolute bar to the information sought.

### III.

Plaintiff argues the trial judge also erred when he declined to analyze its claims under the common law. It urges us to remand for the judge to conduct

an in camera review of the IA report to determine whether it can be released and for findings under the common law factors.

Plaintiff claims there is a strong presumption of access to records of a civil action because of the constitutional and common law right of access to judicial proceedings and the attendant right to inspect judicial records.  It notes Rule 1:2-1 and Rule 1:38-11 require all proceedings to be conducted in open court, and no record may be sealed except where good cause is shown.  Plaintiff alleges the trial judge did not require defendants to demonstrate good cause or an interest that outweighed the presumption of access.

Amicus, the American Civil Liberties Union, joins this aspect of plaintiff's argument and asserts the trial judge was obligated to consider the Rivera factors to determine whether there is a common law right of access to the records.  It claims the trial judge should have chosen redaction or some other less-intrusive means of addressing defendants' concerns, rather than categorically sealing the record.

Rivera involved an IA investigation of the director of a police department, which concluded he used racist and sexist language when discussing employees. 250 N.J. at 135.  After the director resigned, the plaintiff requested records relating to the incident under OPRA and the common law, including the IA

report. Ibid. The request was denied, citing a need for privacy. Ibid. The Court remanded to the trial court to consider whether to release the IA materials pursuant to the common law right of access. Id. at 136.

The common law right of access requires courts to consider the following factors:

> (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decision[]making will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.
>
> [Id. at 144 (quoting Loigman v. Kimmelman, 102 N.J. 98, 113 (1986)).]

The Court stressed the factors are not exhaustive because they "focus[] primarily on the State's interest in preventing disclosure" and confidentiality, which must be balanced against the public's interest. Id. at 144-45, 147. Although "[s]tatutes and regulations can also factor into the balancing process[,]

11

[they] do not determine its outcome. Expressions of executive or legislative policy can weigh very heavily in the analysis, but they are not dispositive." Id. at 144.

The Court held "the public has an interest in the disclosure of internal affairs reports in order to hold officers accountable, to deter misconduct, to assess whether the internal affairs process is working properly, and to foster trust in law enforcement." Id. at 147. Considerations that may heighten the public's interest in transparency include: (1) the nature and seriousness of the misconduct; (2) whether the alleged misconduct was substantiated; (3) the nature of the discipline imposed; (4) the nature of the official's position; and (5) the individual's record of misconduct. Id. at 148.

The trial judge should have analyzed the facts of this case by applying Loigman and Rivera. We do not portend what the trial judge will ultimately decide when he reconsiders his decision on remand. However, the lieutenant's position, the misconduct he engaged in outside of the scope of his work, the charges he faced, the subsequent guilty plea to a different offense and PTI, and the IA investigation generated in the aftermath, point to the fact the public would have an interest in disclosure and transparency. Although the record may still

develop on remand, based on the record before us, none of the six <u>Loigman</u> factors appear to favor non-disclosure.

For these reasons, we remand to the trial judge to conduct an analysis of the factors and reach his own conclusions. As required by <u>Rivera</u>, the judge shall review the IA report in camera, and if he satisfied the factors have been met to warrant disclosure, he should make the appropriate redactions to protect legitimate confidential information[1] and release the information. <u>Rivera</u>, 250 N.J. at 151.

It follows from our analysis of the expungement statute, and the want of findings under the common law factors, that the judge should not have sealed the entire file without finding good cause to overcome the strong presumption of public access to court records. <u>See</u> <u>R.</u> 1:2-1(c) and <u>R.</u> 1:38-11. The onus was

---

[1] The items subject to redaction include

> the names of complainants, witnesses, informants, and cooperators, as well as information that could reasonably lead to the discovery of their names; non-public, personal identifying information about officers and others, such as their home addresses and phone numbers; and personal information that would violate a person's reasonable expectation of privacy if disclosed, such as medical information.
>
> [<u>Rivera</u>, 250 N.J. at 150.]

13

on defendants to demonstrate their interest in secrecy substantially outweighed the presumption of public access to the records. Hammock by Hammock v. Hoffmann-LaRoche, Inc., 142 N.J. 356, 381 (1995).

"[T]he trial court . . . must examine each document individually and make factual findings with regard to why the presumption of public access has been overcome." Id. at 382 (emphasis in original). This is because "[t]he need for secrecy should extend no further than necessary to protect the confidentiality. Documents should be redacted when possible, editing out any privileged or confidential subject matter . . . ." Ibid. (citing S. Jersey Pub. Co. Inc. v. N.J. Expressway Auth., 124 N.J. 478, 488-89 (1991)). The judge should also consider whether the information is already "in the public domain . . . ." Id. at 384 (quoting Smith v. BIC Corp., 869 F.2d 194, 199-200 (3d Cir. 1989)).

The portion of the April 4, 2023 order denying plaintiff's request to unseal the matter is reversed. We direct the trial judge to undertake the necessary analysis required under the Rules of Court and Hammock before deciding whether to seal this case.

IV.

Finally, at oral argument, plaintiff advised it did not brief the fee issue considering the Supreme Court's ruling common law right of access claims are

14

not an exception to the American rule, which bars fee shifting. <u>Gannett Satellite Info. Network, LLC v. Twp. of Neptune</u>, 254 N.J. 242, 265 (2023). This aspect of the trial judge's decision is affirmed.

Affirmed in part, and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2721-22