SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Richard Rivera v. Union County Prosecutor's Office** (A-58-20) (084867)

**Argued January 4, 2022 -- Decided March 14, 2022**

**RABNER, C.J., writing for a unanimous Court.**

This appeal centers around an internal affairs investigation into misconduct by a former police director. The key question is how to balance the need for confidentiality in internal affairs investigations with the public's interest in transparency when a member of the public seeks access to records of an investigation. The Court considers both the Open Public Records Act (OPRA) and the common law right of access.

In February 2019, an attorney made a complaint to the Union County Prosecutor's Office on behalf of employees of the Elizabeth Police Department. The complaint alleged that Police Director James Cosgrove, the civilian head of the Department for more than two decades, used racist and sexist language to refer to employees on multiple occasions. In response, the Prosecutor's Office conducted an internal affairs investigation. On April 16, 2019, the Office sustained the complaints; ten days later, the Attorney General issued a public statement describing the investigation and its conclusion and calling upon Cosgrove to resign, which he did.

In July 2019, plaintiff Richard Rivera filed a request for records with the Prosecutor's Office based on OPRA and the common law. As relevant here, plaintiff asked for "all internal affairs reports regarding" Cosgrove. The Prosecutor's Office denied the request on the ground that it was "exempt from disclosure under OPRA" and not subject to disclosure under the common law.

Plaintiff filed a complaint in 2019 against the Prosecutor's Office and its records custodian, relying on OPRA and the common law. The Prosecutor's Office answered, citing the need for confidentiality based on witnesses' expectations of privacy and the need to preserve the Office's ability to gather facts in similar investigations. The City of Elizabeth intervened and likewise stressed the importance of confidentiality, noting that witnesses' identities could be determined even with redactions and that disclosure would make it less likely that employees would report alleged workplace policy violations.

1

The trial court concluded the internal affairs report should be made available under OPRA. The Appellate Division reversed, finding that the requested materials were not exempt as "personnel records" under OPRA (N.J.S.A. 47:1A-10), but that they could not be disclosed under OPRA on other grounds (N.J.S.A. 47:1A-1, -9(a) and (b)). Next, the Appellate Division rejected plaintiff's common law claim, determining that defendant's interest in preventing disclosure outweighed plaintiff's right to the documents. The Court granted certification. 246 N.J. 236 (2021).

**HELD:** *OPRA does not permit access to internal affairs reports, but those records can and should be disclosed under the common law right of access -- subject to appropriate redactions -- when interests that favor disclosure outweigh concerns for confidentiality. The Court provides guidance on how to conduct that balancing test.

*In this case, the internal affairs report should be disclosed, as the Attorney General properly concedes, after the trial court reviews it and redacts parts that raise legitimate confidentiality concerns. The Court remands the matter to the trial court for it to review the report, complete the necessary balancing test, and enter an order of disclosure. The Court asks the trial court to proceed expeditiously.

1. OPRA gives the public ready access to government records unless the statute exempts those records from disclosure. Defendants argue that internal affairs reports are exempt under several sections of the statute. One of those provisions states that OPRA "shall not abrogate or erode any executive or legislative privilege or grant of confidentiality heretofore established or recognized by the Constitution of this State, statute, court rule or judicial case law." N.J.S.A. 47:1A-9(b) (emphases added). (pp. 12-13)

2. Section 9(b) clearly exempts internal affairs reports from public disclosure. The Attorney General has the authority under N.J.S.A. 52:17B-4(d) to "adopt rules and regulations for the efficient conduct of the work and general administration of the" Department of Law and Public Safety. Since 1991, the Attorney General has promulgated an Internal Affairs Policy and Procedures manual (IAPP) to address complaints of police misconduct; the IAPP contains a confidentiality provision that has largely remained intact since 1991. The current IAPP allows for disclosure in certain limited circumstances, but access is to be granted "sparingly," for good cause. In 1996, the Legislature enacted N.J.S.A. 40A:14-181, which directs all law enforcement agencies to "adopt and implement guidelines which shall be consistent with the" IAPP manual. When section 181 was enacted, the IAPP conferred confidentiality on internal affairs records, and the new law effectively made the IAPP's provisions required policy for law enforcement agencies. Viewed through that lens, section 181, a statute, effectively recognizes a grant of confidentiality established by the IAPP, and OPRA may not abrogate that grant of confidentiality.

2

See N.J.S.A. 47:1A-9(b). Section 9(b) of OPRA therefore exempts internal affairs reports from public disclosure, and the Court does not reach the parties' arguments relating to sections 1, 1.1, 9(a), or 10 of OPRA. (pp. 13-15)

3. OPRA does not limit the right of access to government records under the common law. N. Jersey Media Grp., Inc. v. Township of Lyndhurst, 229 N.J. 541, 578 (2017); N.J.S.A. 47:1A-8. The definition of a public record under the common law is broader than under OPRA. To obtain records under "this broader class of materials, [a] requestor must make a greater showing than OPRA requires." Id. at 578. In particular, "(1) 'the person seeking access must establish an interest in the subject matter of the material'; and (2) 'the [person's] right to access must be balanced against the State's interest in preventing disclosure.'" Ibid. (pp. 15-16)

4. Finding the right balance calls for a careful weighing of the competing interests. Loigman v. Kimmelman, 102 N.J. 98, 108 (1986). In Loigman, the Court identified six factors to consider in balancing those interests. Id. at 113. The list focuses primarily on the State's interest in preventing disclosure, but the public's level of interest must also be assessed. In Gannett Satellite Information Network, LLC v. Township of Neptune, the Appellate Division recently determined that a balancing of the interests favored the release of a police officer's internal affairs records. 467 N.J. Super. 385, 391-92, 408-09 (App. Div. 2021). (pp. 16-18)

5. Here, the trial court ordered disclosure based on its reading of OPRA. As a result, it did not analyze Rivera's common law claim or balance the relevant interests. On appeal, neither party briefed or argued the common law claim. The Appellate Division mistakenly assumed original jurisdiction and addressed the issue. In this case, the record is incomplete and does not allow for the fact-specific balancing test required under the common law. The internal affairs report is not in the record and has not been reviewed by the trial court. And there are no factual findings to review. The trial court is the best forum to elicit facts about the parties' interests under the common law and to balance those interests. (pp. 19-21)

6. The Court provides guidance about the balancing test. The Loigman factors are not a complete list of relevant considerations. See 102 N.J. at 113. They largely examine only one side of the test -- the need for confidentiality -- which "should be balanced [against] the importance of the information sought to the plaintiff's vindication of the public interest." Ibid. In general, the public has an interest in the disclosure of internal affairs reports to hold officers accountable, to deter misconduct, to assess whether the internal affairs process is working properly, and to foster trust in law enforcement. See Lyndhurst, 229 N.J. at 579-80. (pp. 21-22)

7. The public interest in transparency may be heightened in certain situations depending on a number of considerations, including: (1) the nature and seriousness

of the misconduct; (2) whether the alleged misconduct was substantiated; (3) the nature of the discipline imposed; (4) the nature of the official's position; and (5) the individual's record of misconduct. The Court explains how those factors can weigh in the balancing test, stressing that it does not rely on whether an allegation has already been the subject of public interest through official statements or leaks. To allow a court to assess the factors -- those in favor of confidentiality as well as disclosure -- the parties should present more than generalized, conclusory statements. See Paff v. Ocean Cnty. Prosecutor's Off., 235 N.J. 1, 28 (2018); Lyndhurst, 229 N.J. at 580. The Court does not require judges to review actual internal affairs reports in every case because review of the relevant factors may suffice in individual cases. (pp. 22-24)

8. Considering the interests here, the Court notes that the public interest in disclosure is great. Racist and sexist conduct by the civilian head of a police department violates the public's trust in law enforcement. It undermines confidence in law enforcement officers generally, including the thousands of professionals who serve the public honorably. Public access helps deter instances of misconduct and ensure an appropriate response when misconduct occurs. Access to reports of police misconduct promotes public trust. The Court cannot fully evaluate defendant's concerns about confidentiality because they are supported by generic arguments. (pp. 24-25)

9. The trial court here can best assess any potentially legitimate confidentiality concerns by reviewing the report in camera and making appropriate redactions. At a minimum, judges should redact the names of complainants, witnesses, informants, and cooperators, as well as information that could reasonably lead to the discovery of their names; non-public, personal identifying information about officers and others, such as their home addresses and phone numbers; and personal information that would violate a person's reasonable expectation of privacy if disclosed, such as medical information. The Court agrees with the Attorney General that the redacted internal affairs report should be disclosed. (pp. 25-26)

**REVERSED and REMANDED for further proceedings.**

**JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS and JUDGE FUENTES (temporarily assigned) join in CHIEF JUSTICE RABNER's opinion.**

SUPREME COURT OF NEW JERSEY

A-58 September Term 2020

084867

Richard Rivera,

Plaintiff-Appellant,

v.

Union County Prosecutor's Office,
and John Esmerado, in his
official capacity as Records
Custodian for the Union County
Prosecutor's Office,

Defendants-Respondents,

and

City of Elizabeth,

Intervenor-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| January 4, 2022 | March 14, 2022 |

CJ Griffin argued the cause for appellant (Pashman Stein
Walder Hayden, attorneys; CJ Griffin and Joshua P. Law,
on the briefs).

April C. Bauknight, Assistant County Counsel, argued
the cause for respondents Union County Prosecutor's
Office and John Esmerado (Bruce H. Bergen, Union

County Counsel, attorney; April C. Bauknight, on the briefs).

Robert F. Varady argued the cause for respondent City of Elizabeth (La Corte, Bundy, Varady & Kinsella, attorneys; Robert F. Varady, of counsel, and Christina M. DiPalo, on the briefs).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties of New Jersey Foundation, attorneys; Alexander Shalom and Jeanne LoCicero, on the brief).

Michael R. Noveck, Assistant Deputy Public Defender, argued the cause for amici curiae Association of Criminal Defense Lawyers of New Jersey and Public Defender of New Jersey (Joseph E. Krakora, Public Defender, and Gibbons, attorneys; Lawrence S. Lustberg and Michael R. Noveck, on the brief).

Alec Schierenbeck, Assistant Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Andrew J. Bruck, Acting Attorney General, attorney; Alec Schierenbeck and Raymond R. Chance, III, Assistant Attorneys General, of counsel, and Suzanne Davies and Valentina M. DiPippo, Deputy Attorneys General, on the brief).

Bruce S. Rosen submitted a brief on behalf of amici curiae Reporters Committee for Freedom of the Press & 24 Media Organizations (McCusker, Anselmi, Rosen, & Carvelli, attorneys; Bruce S. Rosen, on the brief).

CHIEF JUSTICE RABNER delivered the opinion of the Court.

This appeal centers around an internal affairs investigation into misconduct by a former police director. The key question is how to balance the need for confidentiality in internal affairs investigations with the public's interest in transparency when a member of the public seeks access to records of an investigation.

The investigation here found that the former director of the Elizabeth Police Department engaged in racist and sexist behavior while in office. Plaintiff sought access to the internal affairs report under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of access. The Prosecutor's Office denied the request, and the Appellate Division ultimately ruled against plaintiff in a lawsuit he filed.

Although we find that OPRA does not permit access to internal affairs reports, those records can and should be disclosed under the common law right of access when interests that favor disclosure outweigh concerns for confidentiality.

Existing caselaw on the common law offers guidance on how to evaluate the need for confidentiality. See Loigman v. Kimmelman, 102 N.J. 98, 108 (1986). Today, we outline a number of factors to help courts evaluate the other side of the balancing test -- the need for public disclosure. Those factors include the nature and seriousness of the misconduct, whether it was

3

substantiated, the discipline imposed, the nature of the official's position, and the person's record of misconduct.

In this case, the public interest in disclosure is great. An internal affairs investigation confirmed that the civilian head of a police department engaged in racist and sexist conduct for many years. To date, defendant has raised only generalized concerns about confidentiality, and it does not appear that any court has yet examined the actual internal affairs report. We cannot fully evaluate defendant's claims on the incomplete record before us.

The internal affairs report should be disclosed, as the Attorney General properly concedes, after the trial court reviews it and redacts parts that raise legitimate confidentiality concerns. We therefore remand the matter to the trial court for it to review the report, complete the necessary balancing test, and enter an order of disclosure. We ask the court to proceed expeditiously.

I.

In February 2019, an attorney made a complaint to the Union County Prosecutor's Office on behalf of employees of the Elizabeth Police Department. The complaint alleged that Police Director James Cosgrove, the civilian head of the Department for more than two decades, used racist and sexist language to refer to employees on multiple occasions.

4

In response, the Prosecutor's Office conducted an internal affairs investigation. On April 16, 2019, the Office notified the attorney in writing that "Cosgrove has used derogatory terms in the workplace when speaking about city employees," in violation of Elizabeth's policies against discrimination and harassment. The Prosecutor's Office noted "the complaints are sustained." The attorney disclosed the letter to the media, which reported on it.

On April 26, 2019, Attorney General Gurbir S. Grewal issued a public statement about the Cosgrove matter. In it, he noted the two-month internal affairs investigation had "concluded that, over the course of many years, Director Cosgrove described his staff using derogatory terms, including racist and misogynistic slurs." Statement of Att'y Gen. Gurbir S. Grewal (Apr. 26, 2019), https://www.nj.gov/oag/newsreleases19/pr20190426c.html. The Attorney General called on Cosgrove to resign immediately, appointed the First Assistant Attorney General as Acting Union County Prosecutor, and directed her to conduct an audit of the Police Department's "workplace culture." Ibid. Cosgrove resigned soon after.

On July 1, 2019, plaintiff Richard Rivera filed a request for records with the Prosecutor's Office based on OPRA and the common law. He asked for (1) "the report regarding Elizabeth PD's internal affairs issues and claims of

racism and misogyny," and (2) "all internal affairs reports regarding" Cosgrove. Plaintiff acknowledged "that redactions may be required, for example, to protect the identity of a complainant," and asked for redacted reports.

The Prosecutor's Office denied the request. As to the first item, it stated that, "in general . . . no such report exists." The Office declined to disclose the internal affairs report on Cosgrove both because it was "exempt from disclosure under OPRA" as a "personnel and/or internal affairs record," and because the "interest[s] in maintaining confidentiality significantly outweigh [plaintiff's] interests in disclosure."

To get access to the internal affairs report about Cosgrove, plaintiff filed a complaint on August 21, 2019 against the Prosecutor's Office and its records custodian, relying on OPRA and the common law. In the alternative, plaintiff asked the trial court to review the records, redact parts that are exempt from public access, and disclose the remainder.

The Prosecutor's Office filed an answer along with a certification from Assistant Prosecutor John G. Esmerado, the Office's Investigations Supervisor. Esmerado stated that

> multiple sworn law enforcement and civilian parties, throughout the investigation, . . . were extremely reticent to provide sworn statements if their statement was to be shared with any other party. The

6

> information gathering process was difficult given the sensitive nature of the inquiry. To release the information would unduly hamper and compromise the ability of the Union County Prosecutor's Office to investigat[e] police chiefs and police directors in the future for alleged misconduct investigations. Investigations of a police director, as the civilian leader of the police department is always difficult given the understandably strong sense of leadership a police director brings to a department. To preserve our ability to gather facts, internal affairs reports must maintain confidentiality.

The trial court granted the City of Elizabeth leave to intervene. In support of its motion, Elizabeth submitted a certification from William Holzapfel, the City Attorney. He expressed similar, generic concerns:

> The City requires that confidentiality of the facts discovered during the [internal affairs] investigation be maintained. . . . [T]he City has a real concern that even with redactions as to the identities of any complainants or any other persons who serve as . . . witnesses, the privacy interests of its employees involved will not be protected if there is a public disclosure of the Prosecutor's report.

Holzapel added that disclosure "would have a 'chilling effect' upon City employees to report any future alleged violation of workplace policies." Holzapel noted that "[t]he City was advised of the findings of the internal investigation" but did not say whether he reviewed the actual internal affairs report.

7

At oral argument and in a later written order, the trial court concluded the internal affairs report should be made available under OPRA. The judge directed that "the complete set of investigation materials . . . into the conduct of former Elizabeth Police Director James Cosgrove" be provided to the court for in camera review. The court explained its intention was to disclose "the thrust of the investigation" and also "protect those individuals who could unnecessarily be at risk by public disclosure." In light of the court's ruling under OPRA, it did not reach plaintiff's common law claim.

The Appellate Division granted leave to appeal, stayed the trial court's order, and later reversed its judgment. The Appellate Division initially found the requested materials were not exempt as "personnel records" under OPRA. (citing N.J.S.A. 47:1A-10). The court, however, held that internal affairs reports could not be disclosed under OPRA on other grounds. It relied on N.J.S.A. 47:1A-1 and -9, which provide that OPRA does not abrogate exemptions from public access granted by statute or regulation. Id. § 9(a), (b).

The court explained that the Attorney General adopted an Internal Affairs Policy and Procedures (IAPP) manual pursuant to his statutory authority; the policy ensured that internal affairs records would be confidential, with some exceptions; and the Legislature required all law enforcement agencies to adopt guidelines consistent with the IAPP. As a

8

result, the appellate court concluded that internal affairs reports were exempt from disclosure under section 9. In addition, the court observed that disclosure "could well . . . impair[] the laudable goals of IA investigations" and that redacting "names and identifying circumstances . . . would likely prove very difficult, if not impossible."

Next, the Appellate Division rejected plaintiff's common law claim, even though the trial court had not reached the issue. Without the benefit of the internal affairs report itself, the court determined that defendant's interest in preventing disclosure outweighed plaintiff's right to the documents. The court noted that disclosure would discourage witnesses from coming forward, "would likely disclose their identity," and would frustrate the internal affairs process. The court once again questioned the "adequacy of protecting anonymity through simple redaction."

The Appellate Division later denied plaintiff's motion for reconsideration, in which he asserted it was error for the court to exercise its original jurisdiction and address the common law claim.

We granted plaintiff's petition for certification. 246 N.J. 236 (2021). We also granted leave to appear as amici curiae to the American Civil Liberties Union of New Jersey (ACLU); the Association of Criminal Defense Lawyers (ACDL) and the Public Defender, who submitted a joint brief; the

9

Reporters Committee for Freedom of the Press along with twenty-four media organizations (Reporters Committee); and the Attorney General.

## II.

Plaintiff argues the internal affairs report should be made available under both OPRA and the common law. He maintains that none of OPRA's exemptions apply. In particular, he contends that the Attorney General's IAPP does not fall within the enumerated exceptions under sections 1 and 9 of OPRA. Plaintiff also submits that the Appellate Division erred in its analysis of the common law right of access and should have remanded the matter to the trial court for an in camera review of the internal affairs report.

Various amici support plaintiff's position and argue for the release of the report. Focusing on the common law claim, the ACLU contends the Appellate Division placed too much weight on the IAPP and the generalized need to maintain confidentiality in internal affairs reports. The ACDL and Public Defender argue that New Jersey law favors transparency in public records requests and criminal discovery, and that internal affairs files often contain evidence relevant to criminal cases that can be uncovered by a public records request. The Reporters Committee points to other states that allow access to records of misconduct by law enforcement and emphasizes how important it is for journalists to obtain and report on such records.

10

The Prosecutor's Office urges the Court to affirm the Appellate Division. The Office asserts that internal affairs reports must be kept confidential consistent with the IAPP as well as the letter and spirit of OPRA. Applying the Loigman factors, the Prosecutor's Office also contends the records should not be accessible under the common law because the interest in confidentiality outweighs the public's interest in access. The City of Elizabeth, as an intervenor, echoes those arguments.

The Attorney General argues that all internal affairs materials are exempt from disclosure under sections 1 and 9 of OPRA. According to the Attorney General, however, appropriately redacted internal affairs reports may be released under the common law in certain cases, based on a careful balancing of the relevant interests. The Attorney General proposes a number of factors for courts to consider in weighing the public's interest in transparency. In this case, the Attorney General concedes the factors "strongly suggest that disclosure of the internal affairs report at issue . . . is appropriate." To determine what redactions are necessary, the Attorney General asks the Court to remand the case to the trial court so that it can review the report in camera and apply the relevant factors.

III.

We begin with certain familiar principles about OPRA. OPRA is designed to give members of the public "ready access to government records" unless the statute exempts them from disclosure. Burnett v. County of Bergen, 198 N.J. 408, 421 (2009). The law's core concern is to promote transparency in government. Id. at 414. Maximizing "knowledge about public affairs," in turn, can "ensure an informed citizenry and . . . minimize the evils inherent in a secluded process." Mason v. City of Hoboken, 196 N.J. 51, 64 (2008) (quoting Asbury Park Press v. Ocean Cnty. Prosecutor's Off., 374 N.J. Super. 312, 329 (Law Div. 2004)). Yet without access to government records, even the most engaged members of the public "cannot monitor the operation of our government or hold public officials accountable." Fair Share Hous. Ctr., Inc. v. State League of Muns., 207 N.J. 489, 502 (2011).

To help achieve those aims, the statute broadly defines the term "government record" as any document "made, maintained or kept on file in the course of . . . official [government] business." N.J.S.A. 47:1A-1.1. OPRA also exempts more than twenty categories of records from the definition, ibid., and places on public agencies the burden to prove that a requested item is exempt from disclosure, id. § 6.

12

Defendants argue that internal affairs reports are exempt under several sections of the statute. One of the provisions defendants invoke is section 9(b), which provides that OPRA

> shall not abrogate or erode any executive or legislative privilege or grant of confidentiality heretofore established or recognized by the Constitution of this State, statute, court rule or judicial case law, which privilege or grant of confidentiality may duly be claimed to restrict public access to a public record or government record.
>
> [(emphases added).]

To interpret a statute, we start with the text of the law and give words their generally accepted meaning. DiProspero v. Penn, 183 N.J. 477, 492-93 (2005); N.J.S.A. 1:1-1. In most situations, if the law is clear, our analysis is complete. DiProspero, 183 N.J. at 492-93. Here, we find that the language of section 9(b) clearly exempts internal affairs reports from public disclosure.

The Attorney General has the authority under N.J.S.A. 52:17B-4(d) to "adopt rules and regulations for the efficient conduct of the work and general administration of the" Department of Law and Public Safety. In 1991, Attorney General Del Tufo issued the Department's first Internal Affairs Policy and Procedures manual. In re Att'y Gen. Directives, 246 N.J. 462, 483 (2021). It established a comprehensive process to address complaints of police misconduct. Ibid. The IAPP also contained a confidentiality provision which

13

"guaranteed that '[t]he progress of internal affairs investigations and all supporting materials are considered confidential information.'" Ibid. (quoting 1991 IAPP at 15).[1]

The IAPP's confidentiality provision has largely remained intact since 1991. The current IAPP allows for disclosure in certain limited circumstances -- for example, at the direction of the county prosecutor or the Attorney General, or pursuant to a court order. 2021 IAPP § 9.6.1. But access is to be granted "sparingly," for good cause. Id. § 9.6.2. Recently, the Attorney General directed that law enforcement officers subject to major discipline are to be identified publicly. In re Att'y Gen. Directives, 246 N.J. at 485, 488 (upholding Directive Nos. 2020-5 & 2020-6).

---

[1] The Attorney General draws a distinction between internal affairs investigation "files" and "reports." Files should encompass "the investigation's entire work product" and include "investigators' reports, transcripts of statements, and copies of all relevant documents." 2021 IAPP § 9.3.2. The internal affairs report is prepared at the end of an investigation and "consist[s] of an objective investigative report recounting all of the case's facts and a summary of the case, along with conclusions for each allegation, and recommendations for further action." Id. § 9.1.1.

This case involves a request for internal affairs reports. The complaint quotes and cites plaintiff's OPRA request, which sought "[a] copy of all internal affairs reports regarding . . . Cosgrove." Complaint ¶ 30; see also id. ¶ 43. At oral argument, plaintiff's counsel confirmed the request was for "reports," not witness statements or work product. Our focus is therefore on the internal affairs report or reports about Cosgrove.

14

In 1996, the Legislature enacted a law that "underscores the force of the IAPP." Id. at 488. The statute, N.J.S.A. 40A:14-181, directs all law enforcement agencies to "adopt and implement guidelines which shall be consistent with the" IAPP manual. When section 181 was enacted, the IAPP conferred confidentiality on internal affairs records, and the new law effectively made the IAPP's provisions required policy for law enforcement agencies. See Fraternal Ord. of Police, Newark Lodge No. 12 v. City of Newark (FOP), 244 N.J. 75, 101 (2020).

Once again, the critical language in section 9(b) states that OPRA "shall not abrogate or erode any . . . grant of confidentiality . . . recognized by . . . statute." N.J.S.A. 47:1A-9(b). Viewed through that lens, section 181, a statute, effectively recognizes a grant of confidentiality established by the IAPP. OPRA may not abrogate such a grant of confidentiality. Ibid. Section 9(b) of OPRA therefore exempts internal affairs reports from public disclosure.

As a result, we do not reach the parties' other arguments relating to sections 1, 1.1, 9(a), or 10 of OPRA.

## IV.

Rivera alternatively seeks access to the internal affairs report under the common law. Although both paths raise similar considerations, OPRA does

15

not limit the right of access to government records under the common law. N. Jersey Media Grp., Inc. v. Township of Lyndhurst, 229 N.J. 541, 578 (2017); N.J.S.A. 47:1A-8 ("Nothing contained in [OPRA] . . . shall be construed as limiting the common law right of access to a government record, including criminal investigatory records of a law enforcement agency.").

A.

The definition of a public record under the common law is broader than under OPRA. Mason, 196 N.J. at 67. To constitute a common law public record, an item must "be a written memorial . . . made by a public officer, and . . . the officer [must] be authorized by law to make it." Nero v. Hyland, 76 N.J. 213, 222 (1978) (quoting Josefowicz v. Porter, 32 N.J. Super. 585, 591 (App. Div. 1954)). Under that standard, the internal affairs report is a public record.

To obtain records under "this broader class of materials, [a] requestor must make a greater showing than OPRA requires." Lyndhurst, 229 N.J. at 578. In particular, "(1) 'the person seeking access must establish an interest in the subject matter of the material'; and (2) 'the [person's] right to access must be balanced against the State's interest in preventing disclosure.'" Ibid. (quoting Mason, 196 N.J. at 67-68). Finding the right balance calls for a careful weighing of the competing interests. Loigman, 102 N.J. at 108.

16

The Court in <u>Loigman</u> identified six factors to consider in balancing the interests:

> (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government;
>
> (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed;
>
> (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure;
>
> (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers;
>
> (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and
>
> (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.
>
> [<u>Id.</u> at 113.]

The list focuses primarily on the State's interest in preventing disclosure.

Statutes and regulations can also factor into the balancing process but do not determine its outcome. Expressions of executive or legislative policy can weigh very heavily in the analysis, but they are not dispositive. <u>Home News v. Dep't of Health</u>, 144 N.J. 446, 455 (1996); <u>S. N.J. Newspapers, Inc. v.</u>

17

Township of Mt. Laurel, 141 N.J. 56, 76 (1995); Higg-A-Rella, Inc. v. County of Essex, 141 N.J. 35, 48 (1995).

The Court has previously looked to the common law to consider the release of law enforcement records that were not accessible under OPRA. See Lyndhurst, 229 N.J. at 578-81 (ordering disclosure of dash cam recordings); Paff v. Ocean Cnty. Prosecutor's Off., 235 N.J. 1, 30 (2018) (remanding to consider the release of dash cam footage); Gilleran v. Township of Bloomfield, 227 N.J. 159, 177-78 (2016) (noting that footage from a security camera protecting public facilities could qualify for release in certain circumstances).

In Gannett Satellite Information Network, LLC v. Township of Neptune, the Appellate Division recently upheld a trial court's decision to release a police officer's internal affairs records. 467 N.J. Super. 385, 391 (App. Div. 2021). After his multiple incidents of domestic violence, the officer shot and killed his ex-wife with his service revolver, in front of their young daughter. Id. at 391-92. The court concluded the records were exempt from disclosure under OPRA but should be made available under the common law. Id. at 391. As part of its balancing of interests, the court pointed to the horrific nature of the crime committed by an off-duty officer, the public's "strong interest in knowing how such an event could have occurred" in light of the officer's history, and the extensive public reporting on the matter. Id. at 408-09.

18

B.

The trial court ordered disclosure in this case based on its reading of OPRA. As a result, it did not analyze Rivera's common law claim or balance the relevant interests. On appeal, neither party briefed or argued the common law claim. The Appellate Division mistakenly assumed original jurisdiction and addressed the issue.

Appellate courts can "exercise . . . original jurisdiction as is necessary to the complete determination of any matter on review." R. 2:10-5. That power should be invoked "sparingly," State v. Jarbath, 114 N.J. 394, 412 (1989), and is generally used when the record is adequately developed and no further fact-finding is needed, Price v. Himeji, LLC, 214 N.J. 263, 294-95 (2013); State v. Santos, 210 N.J. 129, 142 (2012). Original jurisdiction can also be invoked "to eliminate unnecessary further litigation," Santos, 210 N.J. at 142, or when the public interest favors "an expeditious disposition of [a] significant issue[]," Karins v. City of Atlantic City, 152 N.J. 532, 540-41 (1998).

In this case, the record is incomplete and does not allow for the fact-specific balancing test required under the common law. The internal affairs report is not in the record and has not been reviewed by the trial court. And there are no factual findings to review.

The record consists primarily of two brief certifications from the Prosecutor's Office and the City of Elizabeth that do not disclose particular facts about what took place. As noted earlier, the certifications chiefly contain generalized statements about how disclosure of the internal affairs report might not protect the privacy interests of witnesses and employees, could have a chilling effect on their willingness to report violations in the future, and could thus hamper future investigations into police misconduct.

The trial court is the best forum to elicit facts about the parties' interests under the common law and to balance those interests. See Phila. Newspapers, Inc. v. Dep't of L. & Pub. Safety, 232 N.J. Super. 458, 466 (App. Div. 1989). For that reason, appellate courts routinely remand cases to the Law Division to conduct the balancing test. See, e.g., Paff, 235 N.J. at 30; Gilleran, 227 N.J. at 177; S. N.J. Newspapers, Inc., 141 N.J. at 75; S. Jersey Publ'g Co. v. N.J. Expressway Auth., 124 N.J. 478, 498 (1991); Drinker Biddle & Reath LLP v. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 501 (App. Div. 2011). Because the record is inadequate to fully resolve plaintiff's common law claim, and the trial court has not yet addressed the issue, we remand the matter to the trial judge to review the internal affairs report in camera and complete a fact-sensitive balancing test.

We also offer additional guidance to assist trial courts in balancing the public interest and the need for confidentiality. In doing so, we draw on a number of thoughtful suggestions offered by the Attorney General and plaintiff.

C.

The <u>Loigman</u> factors are not a complete list of relevant considerations, as the Court noted in its decision. 102 N.J. at 113. They largely examine only one side of the balancing test -- the need for confidentiality. <u>Ibid.</u> Confidentiality in internal investigations can be important in certain matters to encourage witnesses to come forward and cooperate; to protect personal information about witnesses, victims, the subject of an investigation, and others; and to avoid impairing the internal affairs process, among other reasons. <u>See</u> <u>ibid.</u>; <u>FOP</u>, 244 N.J. at 106. Those concerns are reflected in the IAPP's treatment of internal affairs materials generally.

The <u>Loigman</u> Court acknowledged that the six factors it identified, as well as other considerations, "should be balanced [against] the importance of the information sought to the plaintiff's vindication of the public interest." <u>Loigman</u>, 102 N.J. at 113. We turn our attention to that part of the balancing test now.

21

In general, the public has an interest in the disclosure of internal affairs reports in order to hold officers accountable, to deter misconduct, to assess whether the internal affairs process is working properly, and to foster trust in law enforcement. See Lyndhurst, 229 N.J. at 579-80. The public interest in transparency may be heightened in certain situations depending on a number of considerations. They include the following factors and others:

(1) *the nature and seriousness of the misconduct.* Serious misconduct gives rise to a greater interest in disclosure. For example, misconduct that involves the use of excessive or deadly force, discrimination or bias, domestic or sexual violence, concealment or fabrication of evidence or reports, criminal behavior, or abuse of the public trust can all erode confidence in law enforcement and weigh in favor of public disclosure;

(2) *whether the alleged misconduct was substantiated.* Unsubstantiated or frivolous allegations of misconduct present a less compelling basis for disclosure;

(3) *the nature of the discipline imposed.* Investigations that result in more serious discipline, like an officer's termination, resignation, reduction in rank, or suspension for a substantial period of time, favor disclosure. See In re Att'y Gen. Directives, 246 N.J. at 485;

22

(4) *the nature of the official's position.* Wrongdoing by high-level officials can impair the work of the department as a whole, including the functioning of the internal affairs process; and

(5) *the individual's record of misconduct.* The public's interest in disclosure extends to all officers -- regardless of rank -- whose serious or repeated misconduct may pose a danger to the public.

As to all of those areas, transparency can expose problems that need to be addressed or reassure the public about police conduct.

We do not rely on whether an allegation has already been the subject of public interest as part of the balancing process. Official statements or leaks that may attract public attention should not drive the disclosure analysis; the question is whether the misconduct in question is rightly a matter of public interest, even if the information has not yet been revealed.

To assess the above factors -- those in favor of confidentiality as well as disclosure -- the parties should present more than generalized, conclusory statements. See Paff, 235 N.J. at 28; Lyndhurst, 229 N.J. at 580. More detailed objections enable judges to conduct the delicate balancing the common law requires. As part of that analysis, we do not require judges to review actual internal affairs reports in every case. See S. Jersey Publ'g Co.,

23

124 N.J. at 499. A preliminary review of the relevant factors may suffice in individual cases.

## V.

As noted earlier, the internal affairs report qualifies as a public record under the common law. And defendant and the City of Elizabeth do not dispute that plaintiff has an interest in the documents requested. We therefore focus on the required balancing of interests under the common law.

There are good reasons to protect the confidentiality of internal affairs reports under the common law in many instances. This is not one of them.

In this case, the Attorney General concedes that some form of the internal affairs report about Cosgrove should be disclosed under the common law. A number of the above factors weigh heavily in favor of disclosure and lead to the same conclusion.

The allegations against Cosgrove involved serious misconduct -- racist and sexist behavior in office over an extended period of time. An investigation substantiated the serious claims against Cosgrove. That finding led to his resignation weeks later. See Lyndhurst, 229 N.J. at 580 n.10 (noting the need for confidentiality may wane after an investigation has ended).

Cosgrove held the position of police director, the civilian leader of the Elizabeth Police Department. As someone at the highest echelon of the

department, his behavior had the capacity to influence others and set the tone for the department. His position could also cast doubt on the department's internal affairs process and its ability to monitor itself, and raise questions about whether others knew what was happening.

In a matter like this, the public interest in disclosure is great. Racist and sexist conduct by the civilian head of a police department violates the public's trust in law enforcement. It undermines confidence in law enforcement officers generally, including the thousands of professionals who serve the public honorably.

As we recently noted, "access to public records fosters transparency [and] accountability." Libertarians for Transparent Gov't v. Cumberland County, ___ N.J. ___, ___ (2022) (slip op. at 18-19). Public access helps deter instances of misconduct and also helps ensure an appropriate response when misconduct occurs. In the long run, access to reports of police misconduct like the one sought here promotes public trust.

We cannot fully evaluate defendant's concerns about confidentiality because they are supported by generic arguments. The trial court here can best assess any potentially legitimate confidentiality concerns by reviewing the report in camera and making appropriate redactions. See S. Jersey Publ'g Co., 124 N.J. at 499. At a minimum, judges should redact the names of

25

complainants, witnesses, informants, and cooperators, as well as information that could reasonably lead to the discovery of their names; non-public, personal identifying information about officers and others, such as their home addresses and phone numbers; and personal information that would violate a person's reasonable expectation of privacy if disclosed, such as medical information.[2]

For those reasons, we agree with the Attorney General that the internal affairs report should be disclosed. At this time, though, without a more complete record and factual findings to review, we are not in a position to determine the scope of what can be released. We therefore remand to the trial court to review the internal affairs report in camera and complete the necessary balancing test on an expedited basis.

## VI.

For those reasons, we reverse the judgment of the Appellate Division and remand the matter for further proceedings consistent with this opinion.

---

[2] In his OPRA request, plaintiff asked the Prosecutor's Office to produce redacted records to protect the identity of any complainants. Before this Court, he continues to have no objection to redactions of names and other identifying information about complainants and witnesses.

26

JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS and JUDGE FUENTES (temporarily assigned) join in CHIEF JUSTICE RABNER's opinion.